BROWN, P. J.
—The appeals in these two cases are from judgments entered upon a report of a referee. The appellants in each case presented a claim against the estate of Rudolph Bach, deceased, which, having been rejected by the administrator, were, by stipulation, referred to a referee to hear and determine, and, after a trial, were held by the referee not to be established. We have carefully examined the testimony in each case, and are of the opinion that the decision of the referee was correct, and that the judgment should be affirmed. The deceased was an unmarried man, who, from the year 1884 until his death, in 1893, lodged with Mrs. Walsh. He was about sixty-nine years of age at his death, and possessed of considerable property, and left no *524 kin. During the last few years of his life he was troubled with a disease of his urinary organs, but, until a few months prior to his death, he was not incapacitated from pursuing his ordinary vocation of a bookbinder. Mor was he, until his last illness, confined to his home. The appellant Peter Hughes is a physician, who claims to have rendered Mr. Bach medical services from April 3, 1888, until his death. His bill shows charges for attendance nearly every alternate day during that period until his final illness, when the attendance was on every day. Mrs. Walsh’s bill is for services as a nurse. They appear, from the bill rendered, to have commenced a little earlier than the physician’s services. The charge is for the period from January 1,-1888, to the death of the deceased. Two hundred and eighty-four weeks are charged for at $5 per week, and the balance of the period at $14 per week. The physician’s bill amounts to $2,440, and Mrs. Walsh’s to $1,620. In addition to these two claims,'it also appears that an undertaker’s bill for the expenses of Mr. Bach’s funeral was presented to the respondent, and rejected, which amounted to the sum of $1,406. As the deceased left no relatives and no immediate friends, it is fair to presume that the services rendered by the undertaker were upon the employment of Mrs. Walsh, especially as she testified that she was a witness in the proceedings instituted by the undertaker against the respondent in support of the claim.
Mrs. Walsh was the chief witness in support of Mr. Hughes’ bill, and Mr. Hughes was the chief witness in support of Mrs. Walsh’s bill. It would serve no useful purpose to point out the inaccuracies and inconsistencies in the testimony of these witnesses. It is sufficient to say that we are satisfied that very much of their testimony is untrue. Mr. Bach is shown" to have been a man of very regular habits, and prudent and careful in his expenditures. He paid Mrs. Walsh regularly for his room, and for such meals as she served him, down to the time of his death. He is not shown to have contracted any other debts, or to have left any bills unpaid. During the period from April 1, 1888, to August 1, 1893, he left his lodging place every morning, between six and seven o’clock, walked to his place of business, a distance of about twenty blocks, remained there all day, and walked back to his home in the evening. He never made complaint .to his fellow workmen, and those who associated with him daily at his place of business were not aware that he suffered from any physical weakness or disease. In the face of these facts, it is impossible for us to believe that during the years from 1888 to August, 1893, he required the daily care of a nurse, or the daily advice or services of a physician, or that, if the claimants did occasionally render him services, that he left their bills unpaid. It is incredible that a man who habitually paid his landlady for his room rent and his meals should have left unpaid the services rendered to him as a nurse, by the same person, covering a period of years. And it is equally incredible that if he was a sick man for five years preceding his death, requiring every other ,day the attendance and services of a physician, that fact should have been un *525 known to his daily associates, and that he left the whole bill therefor unpaid. The rule that a fact testified to by a disinterested witness, who is not discredited, which is not in conflict with other evidence, is to be taken as legally established, and cannot be disregarded by the court or jury, is not applicable to this class of cases. The person who could contradict the witness, if his testimony is false, is not living; and the courts have uniformly enforced the rule that claims withheld during the life of an alleged debtor, and sought to be enforced after his death, must be established by satisfactory proof. Kearney v. McKeon, 85 N. Y. 136; Rowland v. Howard, 75 Hun, 4; 56 St. Rep. 722. But the rule that the uncontradicted testimony of a disinterested witness is to be believed is always subject to the limitation that the evidence is not improbable. We are of the opinion that the testimony given in support of the claims presented by the appellants is improbable. It is not unlikely that there may be a just claim for services rendered during the last illness of Mr. Bach, but we are not satisfied that either of the appellants have a just claim for the amounts or for the'periods stated "in the testimony. And we are unable to find in the testimony anything that would support the conclusion that they a lawful claim for any amount. The fictitious character of the bills rendered to the administrator, and the exaggeration of the services rendered, pervade the whole testimony, and require that the whole claim presented should be rejected. The judgment must be affirmed, with costs.
CULLEN, BARTLETT, and HATCH, JJ., concur.