## McKEE v. LAVERY.

(Supreme Court, Appellate Division, Second Department. June 27, 1899.)

1. APPEAL—CONCLUSIONS OF REFEREE.
   The court will not reverse the conclusions of fact of a referee, in the absence of clear and convincing indication that it is wrong.

2. EXECUTORS—RESISTANCE OF CLAIM—COSTS.
   An executrix will not be charged with costs for resisting the allowance of a claim against estate of decedent for nursing his wife during her last illness, when the claimant was a niece of the wife, and the evidence was conflicting as to the making of a contract and the length of services performed, although the claim was finally allowed.

Appeal from judgment on report of referee.

Action by Adelia E. McKee against Ann Lavery, as executrix of John Lavery, deceased. Judgment for plaintiff, and defendant appeals. Modified as to costs, and affirmed as modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles A. Webber, for appellant.
J. Grattan MacMahon, for respondent.

WILLARD BARTLETT, J. The subject-matter of this litigation is a claim by the plaintiff for compensation for services rendered by her, as a professional nurse, to the first wife of John Lavery, from June 20 to September 20, 1895, at the agreed rate of $25 a week, amounting to $325 in all. There was a reference under the statute, and the referee has found in favor of the plaintiff for the full amount of her claim. The appeal brings up only three questions: (1) Whether the contract was established by satisfactory proof; (2) whether, even if there was a contract, the plaintiff's services extended over more than one month; and (3) whether the claim was unreasonably resisted so as to justify the award of costs against the executrix.

The plaintiff was not competent to testify to the making of the contract. Code Civ. Proc. § 829. She called two witnesses to prove it,—her married sister, Rose Ellen Rock, and her sister's husband, James Rock. According to their testimony, Lavery sent for the plaintiff to come and nurse his wife, who was aunt to the plaintiff, and was dying of a cancerous malady. The plaintiff consented to do so, if Lavery would pay her, and he said he would pay her as much as she would receive for attending a case elsewhere in the city. "She said then that her pay was $25 a week, and he agreed to pay it." On the cross-examination of Mrs. Rock, it appeared that the witness also had a claim against the Lavery estate (amounting to $516, on which $100 had been paid), and that she intended to call her sister, the plaintiff herein, as a witness to prove such claim. This feature likens the case to Hughes v. Davenport, 1 App. Div. 182, 37 N. Y. Supp. 243, where, however, the referee rejected the claim. But here we have the corroborative testimony of this witness' husband as to the making and terms of the contract; and, as the referee who saw and heard them both evidently deemed their statements truthful, his conclusion should prevail, in the absence of any clear and convincing indication that it is wrong. The rendition of services by the plaintiff, as nurse, for the first Mrs. Lavery was established by ample proof, including the testimony of the attending physician, Dr. Joseph M. Thompson. His first recorded visit, however, was on August 19, 1895, when he found the plaintiff in charge of the patient as nurse. Mrs. Rock, the plaintiff's sister, had previously testified that it was Dr. Thompson that recommended getting a trained nurse, and that the plaintiff's employment began on the 20th of June. While the doctor testified that the things which the plaintiff did for the patient were of a kind to require skill, yet the services of which he had personal knowledge appear to have extended over only about a month,—August 19 to September 20, 1895, when Mrs. Lavery died. The appellant dwells on the discrepancy in the dates given by Dr. Thompson and Mrs. Rock, and insists that the doctor

could not have recommended the employment of a trained nurse, beginning in June, when his first recorded visit to the patient was in August. It is to be noted, however, that the doctor was not asked anything about having recommended that a trained nurse should be employed; nor was his attention called to the testimony of Mrs. Rock, indicating that he had attended Mrs. Lavery earlier than August. The avoidance of these matters on cross-examination suggests that the counsel for the appellant may have apprehended that the inconsistencies would readily be reconciled, if the memory of the witnesses were refreshed on the subject. The plaintiff's claim that her services extended from June 20 to September 20, 1895, was supported not only by the testimony of her sister Mrs. Rock, but by that of another sister, Minnie McKee, whom the appellant denounces as having been coached, although the appeal book contains nothing to indicate it. Two other witnesses saw the plaintiff acting as nurse to Mrs. Lavery, but their knowledge was confined to August and September, 1895. While I should be better satisfied with an award by the referee based on a shorter period of service than three months, I do not think we ought to interfere with his conclusion on this question of fact. The decedent was a coachman, earning only $12 a week, but it does not follow that he might not have agreed to pay a professional nurse $25 a week to care for his wife during what he probably feared would be a fatal illness. The amount of the estate does not appear in the case, and it may well be that the savings of the decedent were sufficient to make it only natural that he should spend so much in caring for his sick wife.

I can discover no warrant, however, for imposing costs upon the executrix. Her resistance of the claim was not unreasonable, under the circumstances which have been discussed. The judgment should be modified by striking out the award of costs to the plaintiff, and, as thus modified, should be affirmed, without costs of this appeal to either party. All concur.